UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DONALD E. MITCHELL JR., | Case No. 2:19-cv-01066-APG-DJA |
| Plaintiff | SCREENING ORDER |
| v. | |
| BRIAN WILLIAMS SR., et al., | |
| Defendants | |

Plaintiff Donald Mitchell Jr. is in the custody of the of the Nevada Department of Corrections (NDOC). He has submitted a civil rights complaint under 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. ECF Nos. 1, 1-1. I shall temporarily defer the matter of the filing fee. I now screen Mitchell's complaint under 28 U.S.C. § 1915A.

## I.  SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act (PLRA) requires a federal court to dismiss a prisoner's claim if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**II.     SCREENING OF COMPLAINT**

Mitchell sues Brian Williams Sr., Jennifer Nash, Kelly Quinn, Gomez, and Dr. Sanchez for events that took place while he was incarcerated at High Desert State Prison (HDSP). ECF No. 1-1 at 1-3. He alleges three counts and seeks injunctive, declaratory, and monetary relief. *Id.* at 3-20.

**A.  Count I**

In Count I, Mitchell alleges that he ordered nude photos from a company named FYIA Girls. ECF No. 1-1 at 4. Although Mitchell notified the company that he could only receive a

maximum of ten photographs per envelope, the company sent him 19 photos in one envelope. *Id.* A former corrections employee named Carson noted that nine of the photos were unauthorized because they exceed the ten-photograph limit. *Id.* Mitchell did not dispute this decision and sent a form back to the mailroom with instructions to send the photos to his family at his expense. *Id.* Mitchell included an envelope with his family's address and two stamps. *Id.* Mitchell's family never received the photos. *Id.* Mitchell contends that Carson stole the photos. *Id.* Mitchell filed several grievances over this issue, and his grievances were all denied. *Id.* at 5-6.

Based on these allegations, Mitchell asserts that his Fifth and Fourteenth Amendment rights were violated. *Id.* at 4. Mitchell's due process claim against state prison officials is grounded in the Fourteenth Amendment rather than the Fifth Amendment. *See Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) (holding that "[t]he Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States"). As such, I dismiss Mitchell's Fifth Amendment claim with prejudice, as amendment would be futile. Mitchell also asserts that the defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985 (3) and 42 U.S.C. § 1986.

### 1. Fourteenth Amendment

I construe Mitchell's Fourteenth Amendment claim as a claim of deprivation of property. While an authorized, intentional deprivation of property is actionable under the Due Process Clause, neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). An authorized deprivation is one carried out under established state procedures, regulations, or

statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

Mitchell fails to state a due process claim. He alleges that Carson stole photographs that should have been mailed to Mitchell's family. Carson's actions were therefore intentional and unauthorized. The State of Nevada provides Mitchell with a meaningful post-deprivation remedy for this type of loss. *See* Nev. Rev. Stat. § 41.0322 (setting forth guidelines for actions by persons in custody of the NDOC to recover compensation for loss or injury). As such, I dismiss this claim with prejudice, as amendment would be futile.

### 2. Conspiracy

To state a cause of action under 42 U.S.C. § 1985(3), a complaint must allege "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (*citing Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. at 102.

Section 1985(3) may extend beyond race "only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (internal quotations omitted). The Ninth Circuit requires "either that the courts have

designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection." *Id.*

I dismiss Mitchell's claim under § 1985(3) with prejudice as amendment would be futile. Mitchell does not allege conspiracy based on race. Moreover, inmates are not members of a suspect or quasi-suspect class, and thus Mitchell cannot state a claim on that basis. *See Webber v. Crabtree*, 158 F.3d 460, 461 (9th Cir. 1998) (holding that inmates are not members of a suspect class). I also dismiss the claim under 42 U.S.C. § 1986 with prejudice as amendment would be futile. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988) (holding that a claim can be stated under 42 U.S.C. § 1986 only if the complaint contains a valid claim under 42 U.S.C. § 1985).

**B. Count II**

In Count II, Mitchell alleges that on August 17, 2017, defendant Gomez was working the unit controls and failed to let Mitchell into his cell during a five-minute door call. ECF No. 1-1 at 8. Mitchell went to the ask Gomez why he had not let Mitchell into his cell, but Gomez ignored him. *Id.* at 9. Mitchell then told Gomez that he would file a grievance about the issue. *Id.*

The next day, Gomez conducted a search of Mitchell's cell. *Id.* Gomez first ordered Mitchell and his roommate to strip naked in their cell. *Id.* Mitchell asked Gomez whether he could close the door to Mitchell's cell and observe him strip through the window because other inmates were on the tier and could see into his room. *Id.* at 9-10. Gomez denied Mitchell's request, and instead ordered Mitchell and his roommate to go to the shower area. *Id.* at 10. Once they entered the shower area, Gomez ordered both inmates to strip naked. *Id.* Mitchell asked Quinn, the acting sergeant, whether they should really strip naked while other inmates were still

on the tier and could see them. *Id.* Quinn responded that they should strip. *Id.* Mitchell was required to strip naked, bend over, spread his buttocks, hold that position, and then cough. *Id.* at 11. Throughout this procedure, all the other inmates were able to view Mitchell. *Id.*

Mitchell and his roommate were then kept in the showers during the cell search. *Id.* Mitchell asked to view the cell search, and Gomez told him to shut his mouth. *Id.* Mitchell said that he did not have to shut his mouth, and Gomez replied, "if you keep talking then it's going to be whatever from there." *Id.* Mitchell asked whether that was a threat, and Gomez replied that Mitchell could take it however he wanted. *Id.* Mitchell returned to his cell after the search was completed and found that water had been poured all over his legal work and that his headphones and MP3 player were broken. *Id.* at 12.

Mitchell alleges that the defendants violated his First and Fourteenth Amendment rights to file prison grievances and his right to privacy. *Id.* at 8. I construe these claims as a First Amendment retaliation claim, a Fourth Amendment claim based on an improper strip search, and a Fourteenth Amendment due process claim.

### 1. First Amendment

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567-68.  Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id*. at 568-69.

Mitchell states a colorable First Amendment retaliation claim against Gomez and Quin.  I liberally construe the complaint as alleging that Mitchell threatened to file a grievance against Gomez.  This is sufficient to support that Mitchell engaged in protected conduct. *See Garcia v. Strayhorn*, No. 13-CV-807-BEN KSC, 2014 WL 4385410, at *6 (S.D. Cal. Sept. 3, 2014) (reviewing case law indicating that an inmate's threat to file a prison grievance constitutes protected speech but noting case law which states that verbal challenges to prison officials which are argumentative, confrontational, and disrespectful are not protected by the First Amendment). In response to Mitchell's threat to file a grievance, Gomez and Quinn required Mitchell to strip naked in full view of the other inmates in Mitchell's cellblock.  Gomez and Quinn also conducted a search of Mitchell's cell and damaged his property.  These allegations are sufficient to state a colorable claim on screening.  This claim will proceed against Gomez and Quinn.

### 2. Fourth Amendment

Generally, strip searches do not violate the Fourth Amendment rights of prisoners. *See Michenfelder v. Sumner*, 860 F.2d 328, 332-33 (9th Cir. 1988).  However, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. *Id.* at 332. The Fourth Amendment only prohibits unreasonable searches. *Bell v. Wolfish*, 441 U.S. 520, 558 (1979).  "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Id.* at 559.  In each case, a court

must (1) balance the need for the particular search against the invasion of personal rights that the search entails; (2) consider the scope of the particular intrusion; (3) consider the manner in which the search is conducted; (4) consider the justification for initiating the search, and (5) consider the place in which the search is conducted. *Id.* Courts also consider the existence of a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the existence of obvious, easy alternatives" as evidence that the regulation "is an 'exaggerated response' to prison concerns." *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 973 (9th Cir. 2010) (*citing Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

Mitchell states a colorable Fourth Amendment claim. I liberally construe the complaint as alleging that Gomez and Quinn conducted an unnecessary and vindictive strip search. The strip search was not conducted according to proper NDOC procedure and was intentionally conducted to create the maximum possible level of embarrassment to Mitchell in retaliation for his threat to file a grievance. These allegations are sufficient to state a colorable claim on screening. This claim will proceed against Gomez and Quinn.

### 3. Fourteenth Amendment

Mitchell does not explain the basis of his Fourteenth Amendment claim, but it appears he is arguing that the denials of his grievances violated the Fourteenth Amendment. ECF No. 1-1 at 8. Prisoners have no stand-alone due process rights related to the administrative grievance process. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that

there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process). As such, Mitchell cannot state a colorable due process claim based on the denial of his grievances, and I dismiss any such claim with prejudice, as amendment would be futile.[1]

### C. Count III

In Count III, Mitchell alleges that Warden Brian Williams and Associate Warden Jennifer Nash join together to obstruct the grievance process and retaliate against Mitchell for filing grievances. ECF No. 1-1 at 14. Mitchell alleges that he has personally been retaliated against in eleven different ways. *Id.* The first nine forms of retaliation constitute some form of improper response to grievances or denial of grievances. *Id.* at 14-15. The tenth form of retaliation is punitive, harassing, and retaliatory cell searches, and the eleventh form is "intra-facility, intra-unit, inter-facility transfer, adverse classification, adverse reclassification, disciplinary, and other retaliation." *Id.* at 15. Williams and Nash condone and encourage these forms of retaliation. *Id.* at 16. Mitchell brings claims of First Amendment retaliation and conspiracy under 42 U.S.C. § 1985 (3) and 42 U.S.C. § 1986.

#### 1. First Amendment Retaliation[2]

Mitchell fails to state a colorable First Amendment retaliation claim. As an initial matter, his claims that grievances are improperly answered or denied in retaliation for filing said grievances are insufficient to state a colorable claim of First Amendment retaliation. The denial of a grievance in retaliation for the filing of that grievance leaves an individual no worse off for

---

[1] To the extent Mitchell was attempting to state a deprivation of property due process claim based on the destruction of his property during the search, he also fails to state a colorable claim. As discussed in Section A(1), intentional but unauthorized deprivation of property, such as the destruction of property during a cell search, does not give rise to a colorable due process claim.

[2] The standard for stating a First Amendment retaliation claim is discussed in section B(1) above.

having filed the grievance. Thus, it is insufficient to chill an individual of ordinary firmness from future First Amendment activities.

Allegations of retaliatory cell searches, transfers, and disciplinary proceeding may be sufficient to state a colorable First Amendment retaliation claim. But Mitchell does not provide any specific factual allegations about such incidents. Rather, he simply alleges generally that such retaliations occur. These vague allegations are insufficient to support a colorable First Amendment retaliation claim. I therefore dismiss this claim without prejudice and with leave to amend. If Mitchell chooses to file an amended complaint, he must allege with specificity any claims of First Amendment retaliation.

### 2. Conspiracy[3]

I dismiss the 42 U.S.C. § 1985(3) claim with prejudice as amendment would be futile. Mitchell does not allege conspiracy based on race, and inmates are not members of a suspect or quasi-suspect class. Thus, Mitchell cannot state a claim. Because Mitchell does not state a colorable claim under 42 U.S.C. § 1985, I also dismiss the claim under 42 U.S.C. § 1986 with prejudice as amendment would be futile.

## III.   LEAVE TO AMEND

Mitchell is granted leave to file an amended complaint to cure the deficiencies of the complaint. If he chooses to file an amended complaint, he is advised that an amended complaint supersedes (replaces) the original complaint and, thus, the amended complaint must be complete in itself. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) (holding that "[t]he fact that a party was named in the original complaint is irrelevant; an amended pleading supersedes the original"); *see also Lacey v. Maricopa Cnty.*, 693 F.3d 896,

---

[3] The standard for stating a conspiracy claim is discussed in section A(2) above.

928 (9th Cir. 2012) (holding that for claims dismissed with prejudice, a plaintiff is not required to reallege such claims in a subsequent amended complaint to preserve them for appeal). Mitchell's amended complaint must contain all claims, defendants, and factual allegations that he wishes to pursue in this lawsuit.  Mitchell should file the amended complaint on this court's approved prisoner civil rights form, and it must be entitled "First Amended Complaint."

If Mitchell chooses to file an amended complaint curing the deficiencies, he must file the amended complaint **by September 28, 2020**.  If Mitchell chooses not to file an amended complaint, this action will proceed only against Gomez and Quinn on Mitchell's First and Fourth Amendment claims in Count II.

## IV.     CONCLUSION

I hereby order that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

I further order the Clerk of the Court to file Mitchell's complaint (ECF No. 1-1) and send Mitchell a courtesy copy of the complaint.

I further order that Mitchell's Fourteenth Amendment claim in Count I is dismissed with prejudice, as amendment would be futile.

I further order that Mitchell's conspiracy claims under 42 U.S.C. §§ 1985(3), 1986 in Count I are dismissed with prejudice, as amendment would be futile.

I further order that Mitchell's First Amendment retaliation claim in Count II will proceed against defendants Gomez and Quinn.

I further order that Mitchell's Fourth Amendment claim in Count II will proceed against Gomez and Quinn.

I further order that Mitchell's Fourteenth Amendment claim in Count II is dismissed with prejudice, as amendment would be futile.

I further order that Mitchell's First Amendment retaliation claim in Count III is dismissed without prejudice and with leave to amend.

I further order that Mitchell's conspiracy claims under 42 U.S.C. §§ 1985(3), 1986 in Count III are dismissed with prejudice, as amendment would be futile.

I further order that defendants Brian Williams Sr., Jennifer Nash, and Dr. Sanchez are dismissed from the entirety of the case without prejudice.

I further order that, if Mitchell chooses to file an amended complaint curing the deficiencies of his complaint as outlined in this order, Mitchell will file the amended complaint **by September 28, 2020**.

I further order the Clerk of the Court to send to Mitchell the approved form for filing a § 1983 complaint and instructions for the same. If Mitchell chooses to file an amended complaint, he should use the approved form and he will write the words "First Amended" above the words "Civil Rights Complaint" in the caption.

I further order that, if Mitchell chooses to file an amended complaint, the court will screen the amended complaint in a separate screening order. The screening process will take several months.

I further order that, if Mitchell fails to file an amended complaint curing the deficiencies outlined in this order, this action will proceed only against Gomez and Quinn on Mitchell's First and Fourth Amendment claims in Count II.

DATED THIS 24th day of August 2020.

_____
UNITED STATES DISTRICT JUDGE